**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JOHN W. HOWARD
AND TAMMY T. HOWARD**                                                    **PLAINTIFFS**

**VS.**                                        **CIVIL ACTION NO. 1:13cv543-KS-MTP**

**CITIMORTGAGE, INC. and its predecessor in
interest, ABN AMRO MORTGAGE, INC.**                        **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss Plaintiffs' First Amended

Complaint [28] of the Defendant CitiMortgage, Inc. ("CitiMortgage" or "CMI"), individually

and as successor by merger to ABN AMRO Mortgage Group, Inc. ("ABN").  Having

considered the submissions of the parties, the record, and the applicable law, the Court

finds that the motion should be granted in part and denied in part.

**I.  BACKGROUND**

The Plaintiffs John W. Howard and Tammy T. Howard are the owners of certain

real property located in Greene County, Mississippi (the "Subject Property").  On

November 24, 2003, Plaintiffs executed a Note [28-1] and Deed of Trust [28-2],

encumbering the Subject Property, in order to secure a loan in the amount of

$128,000.00.  Plaintiffs also executed an Escrow Waiver Agreement [28-3] enabling

them to pay certain items, such as taxes and insurance premiums, directly to the

appropriate authorities without having to establish an escrow account with the Lender.

ABN is listed as the "Lender" under the Note, Deed of Trust, and Escrow Waiver

Agreement.  In 2007, ABN and CitiMortgage merged with only CitiMortgage surviving

the merger.  In August of that same year, Plaintiffs received a letter stating that the

servicing of their mortgage loan was being transferred from ABN to CitiMortgage, and that future loan payments should be forwarded to CitiMortgage.  (*See* August 10, 2007 Letter [28-4].)

On June 24, 2013, Tammy Howard filed suit against ABN, CitiMortgage, Federal Home Loan Bank Chicago c/o Wells Fargo ("FHLB"), and Wells Fargo in the Circuit Court of Greene County, Mississippi, alleging numerous federal and state law claims relating to the mortgage loan.  (*See* Compl. [1-1 at ECF p. 8].)  On July 29, 2013, CitiMortgage and ABN (sometimes collectively referred to as "CitiMortgage") removed the proceeding to this Court.  (*See* Notice of Removal [1].)  The Notice of Removal asserts that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), and 1367 (supplemental jurisdiction).  All of the Defendants subsequently moved for the dismissal of the Complaint.  On March 26, 2014, the Court entered its Memorandum Opinion and Order [21], dismissing Wells Fargo and FHLB from the action without prejudice; requiring the joinder of John Howard pursuant to Federal Rule of Civil Procedure 19(a); and, denying CitiMortgage's request for dismissal without prejudice to its ability to again move for dismissal after the issue of Mr. Howard's joinder was resolved.

On April 16, 2014, John Howard joined the litigation via the filing of Plaintiffs' First Amended Complaint [25].  CitiMortgage has again moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court has fully considered the parties' competing positions and is ready to rule.

## II.  DISCUSSION

### A.  Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*; *see also In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).   A complaint containing mere "labels and conclusions, or a formulaic recitation of the elements" is insufficient.   *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation and internal quotation marks omitted). Although courts are to accept all well-pleaded facts as true and view those facts in the light most favorable to the nonmoving party, courts are not required "to accept as true a legal conclusion couched as factual allegation."   *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted).   Ultimately, the court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."   *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).   A court may consider matters of public record and documents that are referenced in the complaint and central to the plaintiff's claim in deciding a Rule 12(b)(6) motion.   *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005) (citations omitted).

**B.      Analysis**

**1.      Federal Claims**

**a.      Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA")**

Paragraph 9 of the First Amended Complaint references the FDCPA and FCRA in support of liability:

> This is a federally related mortgage loan.  The Defendant is liable for violations of the Fair Debt Collection Practices Act and Fair Credit Reporting Act by reporting this loan as late due to the manufactured and incorrect charges which Plaintiff did not owe which damaged Plaintiff's credit standing and access to financing and credit.  The improper reporting to credit bureaus such as Experian, Equifax and Transunion have [sic] harmed the Plaintiff [sic] financial standing and caused an inability to access to [sic] credit and financing, more favorable interest rates and other damages which naturally flow from this type of misconduct.

(1st Am. Compl. [25] at ¶ 9.)  CitiMortgage argues that the Plaintiffs' FDCPA claim must be dismissed because it is not a "debt collector" subject to the Act.  This argument is well taken.

The FDCPA allows for the imposition of civil liability against "a debt collector" that fails to comply with any of its provisions.  *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007) (citing 15 U.S.C. § 1692k(a)).  Any person attempting to collect "a debt which was originated by such person; [or,] a debt which was not in default at the time it was obtained by such person" is specifically excluded from the definition of a "debt collector" under the FDCPA.  15 U.S.C. § 1692a(6)(F).  It is clear within the Fifth Circuit that "mortgage lenders are not 'debt collectors' within the meaning of the FDCPA." *Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 789 (S.D. Miss. 2014)

(quoting *Montgomery v. Wells Fargo Bank, N.A.*, 459 Fed. Appx. 424, 428 n.1 (5th Cir. 2012)); *see also Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 477-78 (S.D. Tex. 2012) (holding that the FDCPA did not apply to a lender seeking to recover its own debt).  Also excluded from the scope of the FDCPA is "a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  *Teeuwissen v. JP Morgan Chase Bank, N.A.*, 902 F. Supp. 2d 826, 835 (S.D. Miss. 2011) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)).

For present purposes, the First Amended Complaint establishes that ABN was the original mortgage lender in connection with the Plaintiffs' loan.  (*See* 1st Am. Compl. [25] at ¶ 3.)  The Court must also accept as true the assertion that CitiMortgage became the servicer on the loan in 2007.  (*See* 1st Am. Compl. [25] at ¶ 4.)  Plaintiffs present no allegations to the effect that the loan was in default at the time of the merger between ABN and CitiMortgage leaving CitiMortgage as the surviving entity.  Therefore, the First Amended Complaint fails to offer any plausible basis for imposing FDCPA liability against a debt collector and this claim will be dismissed.  *Cf. Montgomery*, 459 Fed. Appx. at 428 n.1 (finding that the plaintiff's FDCPA claim failed because a mortgage lender does not fall within the FDCPA's definition of a debt collector); *Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed. Appx. 458, 459 (5th Cir. 2004) (affirming the district court's dismissal of the plaintiff's FDCPA claim since the plaintiff failed to allege that he was in default when the defendant began servicing the loan); *Hopson*, 14 F. Supp. 3d at 788-89 (dismissing the plaintiffs' FDCPA claims against a mortgage lender and mortgage servicers); *Teeuwissen*, 902 F. Supp. 2d at 835-36 (ordering dismissal where

the plaintiffs failed to allege that they were in default prior to the defendant's acquisition of the loan).

CitiMortgage also argues that the Plaintiffs have not adequately pled any violation of the FCRA.  The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) (citations omitted).  "Under 15 U.S.C. § 1681s-2(a), 'furnishers' of information that transmit information to a credit reporting agency concerning a debt owed by a consumer have a duty to provide accurate information . . . ."  *Hopson*, 14 F. Supp. 3d at 789 (citation omitted).  However, there is no private right of action under § 1681s-2(a) since the Federal Trade Commission ("FTC") is charged with enforcement of this provision.  *See id.*; *see also Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) ("enforcement of Section 1681s-2(a) shall be by government officials").  "Section 1681s-2(b) imposes duties on furnishers of information to, *inter alia*, investigate disputed information and report the results of any such investigation to the consumer reporting agency."  *Young*, 294 F.3d at 639.  The Fifth Circuit has not decided whether a private individual can maintain a claim against a furnisher of information under § 1681s-2(b).  *See id.*[1]  Nonetheless, the Fifth Circuit has held that a necessary

---

[1] Several other courts have decided the issue in favor of the existence of a private right of action.  *See, e.g.*, *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 36 (1st Cir. 2010); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002); *but see Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 788 (N.D. Ohio 2006) (agreeing with a federal district court in Tennessee, *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 502 (W.D. Tenn. 1999), "that an individual consumer has no private cause of action under 15 U.S.C. § 1681s-2(b)").

element of any such claim is the existence of notice from a credit reporting agency to a furnisher of information that a consumer is contesting certain credit information.  *See Young*, 294 F.3d at 639; *Bank One, N.A. v. Colley*, 294 F. Supp. 2d 864, 870 (M.D. La. 2003) ("[T]he duties created by § 1681s-2(b) do not arise until the furnisher of information receives notice from a consumer reporting agency . . . that a consumer is disputing credit information.") (citation omitted).

In opposing dismissal, Plaintiffs contend they have pled sufficient facts to state a claim against CitiMortgage for negligently reporting inaccurate credit information under the FCRA.  The Court disagrees.  Plaintiffs' allegations of inaccurate credit reporting fail to allow for recovery under § 1681s-2(a) since "plaintiffs have no private right of action" under this provision.  *Hopson*, 14 F. Supp. 3d at 789; *see also Smith v. CitiMortgage, Inc.*, No. 3:08cv492, 2009 WL 1976513, at *3 (S.D. Miss. July 7, 2009) (holding that the defendant was entitled to judgment as a matter of law on the plaintiff's FCRA claims since only the FTC can enforce § 1681s-2(a)).  Without deciding whether Plaintiffs can maintain a private action pursuant to § 1681s-2(b), the Court is able to conclude that the First Amended Complaint lacks allegations satisfying "the notice element" of this Code section.  *Young*, 294 F.3d at 640.  "Plaintiffs do not allege that . . . [CitiMortgage] was ever provided with notice of a dispute they filed with a consumer reporting agency and accordingly they have not stated a cognizable FCRA claim."  *Hopson*, 14 F. Supp. 3d at 790; *see also Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 798-99 (E.D. La. 2013) (rejecting the plaintiffs' § 1681s-2(b) cause of action in the absence of any evidence or allegations indicating that the defendant received notice of a reporting dispute from a credit reporting agency).  Therefore, the Plaintiffs' claims under the

-7-

FCRA will also be dismissed.

### b.    Home Affordable Modification Program ("HAMP")

HAMP is a federal program designed to assist homeowners who have defaulted

on their mortgages, or who are at risk of defaulting, by providing financial incentives to

mortgage servicers and lenders to lower mortgage payments through the modification of

eligible loans.  *See United States v. Morrison*, 713 F.3d 271, 274 (5th Cir. 2013).

Although the First Amended Complaint does not specifically reference HAMP, Plaintiffs

do allege that they sought multiple modifications of their loan and that CitiMortgage

informally denied each request by asking for additional information and documentation

even though it never intended to help them.  In light of this allegation, CitiMortgage

asserts that the Plaintiffs cannot force it to modify their loan or recover for its alleged

failure to comply with HAMP because the program does not provide for a private right of

action.  Plaintiffs' opposition to dismissal confirms or clarifies that their claim is for

CitiMortgage's "failure to adequately evaluate and determine their eligibility for a HAMP

modification after they produced their documentation."  (Pls.' Mem. Resp. in Opp. to

Mot. to Dismiss [33] at pp. 27-28.)

The clear weight of authority among district courts in the Fifth Circuit counsels

that HAMP fails to afford borrowers a private right of action.  *See, e.g.*, *Neel v. Fannie

Mae*, No. 1:12cv311, 2014 WL 1050125, at *10 (S.D. Miss. Mar. 17, 2014) (granting the

defendant's request for summary judgment on the basis that HAMP does not provide for

a private action); *Martinez-Bey v. Bank of Am., N.A.*, No. 3:12-CV-4986-G (BH), 2013

WL 3054000, at *5 (N.D. Tex. June 18, 2013) (recognizing opinions holding that

borrowers cannot maintain private actions against mortgage lenders and servicers

under HAMP); *Tran v. BAC Home Loans Servicing, LP*, No. 4:10cv03514, 2011 WL 5057099, at *2 (S.D. Tex. Oct. 24, 2011) ("[T]he majority of courts have held that HAMP does not create a private right of action in a borrower.").  Plaintiffs appear to seek to avoid this precedent by arguing that they have "alleged, not that CMI failed to award them a HAMP modification, but, rather, that CMI failed to properly and adequately evaluate them under the HAMP guidelines as required by law."  (Pls.' Mem. Resp. in Opp. to Mot. to Dismiss [33] at p. 28.)  The Court finds that this is a distinction without a difference with respect to the Plaintiffs' inability to maintain any HAMP-based claims against CitiMortgage.  "Congress has not created a cause of action for violations of the HAMP . . . guidelines."  *Goffney v. Bank of Am., N.A.*, 897 F. Supp. 2d 520, 526 (S.D. Tex. 2012) (citations omitted).  Accordingly, Plaintiffs are precluded from obtaining any recovery from CitiMortgage based on its alleged failure to comply with HAMP in evaluating their requests for loan modification.

### c.  Dismissal with Prejudice

Ordinarily, a court should provide a claimant an opportunity to amend his complaint prior to granting a motion to dismiss with prejudice.  *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citations omitted).  However, dismissal without leave to amend is appropriate where any amendment would be futile or the plaintiff has presented his best case.  *See Washington v. Weaver*, No. 08-30392, 2008 WL 4948612, at *3 (5th Cir. Nov. 20, 2008) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1988); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000)).  Amendment of the Plaintiffs' HAMP-based claims or allegations implicating 15 U.S.C. § 1681s-2(a) "would be futile, as no private right of action exists" under HAMP or this

statutory provision.  *MM&S Fin., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 364 F.3d 908, 911 (8th Cir. 2004) (affirming the denial of leave to amend with respect to a claim falling under the scope of the Securities Exchange Act).  Furthermore, the Court presumes that the Plaintiffs have stated their best case with respect to the remaining federal claims since there is no pending request for leave to file a second amended complaint. *See, e.g.*, *Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. Appx. 173, 178-79 (5th Cir. 2012); *C & C Inv. Props., LLC v. FDIC*, No. 3:12cv57, 2013 WL 1136337, at *3 (S.D. Miss. Mar. 18, 2013).  Therefore, Plaintiffs' federal claims will be dismissed with prejudice.

### 2.    State Law Claims

Plaintiffs' First Amended Complaint asserts the following state law claims: breach of contract; breach of the implied covenant of good faith and fair dealing; negligent misrepresentation; negligence/gross negligence; negligent infliction of emotional distress; and, intentional infliction of emotional distress.  CitiMortgage seeks the dismissal of each of these claims on the grounds that they are time-barred and/or insufficiently pled.  The Court will look to Mississippi law for the necessary elements of these causes of action and the applicable statutes of limitations given the existence of diversity jurisdiction in this action relating to real property located in Mississippi.  *Cf. Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649-50 (5th Cir. 2001) (applying the law of Texas).

### a.    Statutes of Limitations

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is

evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted).  The United States District Court for the Northern District of Texas has aptly observed "that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [it]self out of court." *TIB–The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 666 (N.D. Tex. 2014) (quoting *W. Fork Partners, L.P. v. Chesapeake Exploration, L.L.C.*, 2009 WL 2252505, at *5 (N.D. Tex. July 29, 2009)).  All of the Plaintiffs' state law claims, except their allegation of intentional infliction of emotional distress ("IIED"), are subject to the three-year period of limitations prescribed by section 15-1-49 of the Mississippi Code. *See Hensarling v. Regions Bank*, No. 3:11cv149, 2012 WL 2839687, at *4 n.6 (S.D. Miss. July 10, 2012) (citations omitted).  Actions alleging IIED are subject to the one-year limitations period provided under section 15-1-35 of the Mississippi Code.  *See Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 423 (¶ 26) (Miss. 2010).

CitiMortgage essentially presents two time-bar arguments.  First, Plaintiffs' breach of contract, breach of implied covenant, negligence/gross negligence, negligent infliction of emotional distress ("NIED"), and IIED claims based on the alleged revocation of the Escrow Waiver Agreement [28-3] and creation of an escrow account are untimely because the Complaint establishes that these circumstances occurred no later than January of 2008, and this suit was filed in June of 2013, more than five years later.  Second, Plaintiffs' negligent misrepresentation, NIED, and IIED claims based on CitiMortgage's purported representations regarding the status of the Plaintiffs' loan are untimely because the last such representation identified in the Complaint was allegedly

-11-

made in January of 2009.  Neither argument warrants the dismissal of any of Plaintiffs'
claims at this stage of the litigation.

Certain of the Complaint's allegations relating to the creation of an escrow
account arguably support CitiMortgage's first time-bar argument.  The Complaint
alleges that CitiMortgage breached its contractual obligations and duty of care by:  (i)
creating an escrow account without proper notice resulting in the revocation of the
Escrow Waiver Agreement [28-3]; (ii) billing for escrow balances and failing to credit the
escrow account; and (iii) failing to correct the account and fix the charges.  (*See* 1st Am.
Compl. [25] at ¶¶ 5, 22, 31-32, 38, 46.)  The Complaint further alleges the existence of a
"conversation about *fixing this account*" occurring "in *January of 2008*, when a CMI
representative in the *escrow department* informed the" Plaintiffs that all past and future
escrow due would be removed if they made a payment in the amount of $488.66.  (1st
Am. Compl. [25] ¶ 35) (emphasis added).  These allegations show that CitiMortgage
established an escrow account, purportedly in violation of the Deed of Trust and Escrow
Wavier Agreement, at least by January of 2008, more than five years prior to the
initiation of this lawsuit.

Plaintiffs do not dispute the timing of the creation of the escrow account in
opposition to dismissal.  Rather, Plaintiffs invoke the continuing tort doctrine in response
to CitiMortgage's statutes of limitations defense.  "Plaintiffs would argue that the
continuing tort doctrine should nevertheless apply to their escrow-related claims insofar
as a continuing and repeated tort occurred each time CMI altered, in any way, the
balance of the wrongfully-established escrow account because such action constitutes
repeated conduct on the part of CMI."  (Pls.' Mem. Resp. in Opp. to Mot. to Dismiss [33]

at pp. 6-7.)

The Mississippi Supreme Court has described the continuing tort doctrine as follows:

> [W]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease.  Where the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong.
>
> A "continuing tort" is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action.  *A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.*

*Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993) (citations omitted).  The doctrine is inapplicable "when harm reverberates from one wrongful act or omission"; tolling depends on the existence of "repeated acts of wrongful conduct."  *Pierce v. Cook*, 992 So. 2d 612, 619 (¶ 25) (Miss. 2008) (quoting *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 148-49 (Miss. 1998)).  In a 2011 opinion, Chief Judge Guirola found that Mississippi law supported the existence of a continuing breach of contract claim in rejecting a statute of limitations defense.  *See Singing River Elec. Power Ass'n v. Bellsouth Telecomms.*, No. 1:10cv486, 2011 WL 5082235, at *7 (S.D. Miss. Oct. 26, 2011) (citing *Merchants & Marine Bank v. Douglas-Guardian Warehouse Corp.*, 801 F.2d 742, 745 (5th Cir. 1986); *Provenza v. Stamps*, No. 1:09cv191, 2010 WL 706480, at *2 (S.D. Miss. Feb. 22, 2010)).[2]  Chief Judge Guirola also found the Mississippi

---

[2] *But see Baldwin v. Miss. State Univ.*, No. 1:08cv191, 2009 WL 3647356, at *2 (N.D. Miss. Nov. 3, 2009) ("[T]he Court has been unable to find, and Plaintiff has not provided any authority, of the continuing violation doctrine applying in contract actions.").

Supreme Court's description of the continuing tort doctrine persuasive in holding that the defendant's "repeated and continuous acts of alleged wrongful conduct" served to extend the statute of limitations on a breach of contract claim. *Singing River Elec. Power Ass'n*, 2011 WL 5082235, at *7-8.

The Complaint contains several allegations of repeated wrongful conduct plausibly implicating the existence of a continuing tort or breach of contract:

(i)   "There have been more than 48 property inspections by CMI, all for the purpose of continuing to rack up unnecessary charges on the mortgage." (1st Am. Compl. [25] at ¶ 7.)

(ii)  "The Defendant was presented with sufficient information to fix the Plaintiff's account on numerous occasions but failed to take steps to do so. . . . A reasonable Defendant would have taken steps to comply with their contractual obligations to fix the account. . . . Instead of correcting the account and fixing the charges, CMI added more charges and then tried to foreclose."  (1st Am. Compl. [25] at ¶¶ 31-32.)

(iii) "Plaintiff was already paying her own escrow when CMI took over the servicing of her loan.  On multiple occasions the Plaintiff produced proof to CMI that she paid taxes and insurance on her home.  Despite this, CMI continued to bill for an escrow that the Plaintiff did not owe.  Despite multiple representations that CMI was remedying these errors, this was never done."  (1st Am. Compl. [25] at ¶ 38.)

(iv)  "CMI falsely informed the Plaintiff in an effort to have her pay more money, while at the same time representing to her that there were errors in her account which they were fixing and that Plaintiff's payment was current and in the proper amount.  These verbal representations conflicted with the letters subsequently received by Plaintiff.  When Plaintiff attempted to get clarification, she was assured that CMI had made an error and that the Plaintiff was at all times correct.  Regardless of these representations, CMI marked Plaintiff's mortgage ready for foreclosure and CMI's foreclosure team began assembling the necessary documentation."  (1st Am. Compl. [25] at ¶¶ 39-40.)

(v)   CMI failed "to properly apply the Plaintiff's payments;" improperly overcharged "the Plaintiffs for their mortgage payments;" and, improperly refused "to accept the Plaintiff's mortgage payments".  (1st Am. Compl. [25] at ¶ 46.)

-14-

(vi) "Despite Plaintiff's multiple attempts to demonstrate that she paid her own taxes and homeowner's insurance, CMI refused to alter the mortgage status, and kept the Plaintiff in suspense status.  While in suspense status, CMI charged corporate advances and property preservation fees upon Plaintiff's mortgage.  The Plaintiffs do not owe for these charges." (1st Am. Compl. [25] at ¶ 49.)

Accepting "all factual allegations in the complaint as true" and drawing "all reasonable inferences in the plaintiff[s'] favor",[3] it is not evident "that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones*, 339 F.3d at 366.

The central flaw in CitiMortgage's time-bar argument relating to the Plaintiffs' claims of negligent misrepresentation, NIED, and IIED is that it requires the Court to draw inferences in the moving party's favor.  CitiMortgage asserts that to the extent these claims are based on its alleged representations regarding the status of the Plaintiffs' account, they are untimely because the last representation "identified in the Amended Complaint was made during a telephone call on January 29, 2009", more than four years prior to the filing of this action.  (Def.'s Brief in Supp. of Mot. to Dismiss [29] at pp. 11, 24.)  This argument overlooks the Complaint's references to "misrepresentations", "multiple representations", and "verbal representations" that are not specifically dated.  (1st Am. Compl. [25] at ¶¶ 37-39.)  Assuming that each of these communications occurred outside of the applicable period of limitations would conflict with the Court's present duty to "draw all inferences in favor of the . . . [Plaintiffs], not against them."  *Morgan v. Swanson*, 659 F.3d 359, 420 (5th Cir. 2011) (citations omitted); *cf. Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am.*, No. 3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (denying the

---

[3] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citations omitted).

defendant's Rule 12(b)(6) motion based on the statute of limitations where the complaint failed to provide dates for certain occurrences, and thus, the affirmative defense did not appear on the face of the pleading); *Nat'l Util. Serv., Inc. v. Xanser Corp.*, No. 3:03-CV-0878-P, 2003 WL 22939107, at *4 (N.D. Tex. Dec. 1, 2003) (same).

Based on the foregoing, the Court finds that the Plaintiffs have not pled themselves "out of court" and CitiMortgage's request for dismissal "on the basis of limitations at the pleadings stage" is denied. *TIB–The Indep. BankersBank*, 13 F. Supp. 3d at 666. Whether the Plaintiffs' claims are, in fact, timely via the continuing tort doctrine or some other ground is not being decided today. These issues may be revisited following the development of the facts through discovery and upon summary judgment briefing.

### b. Sufficiency of the Pleadings

#### (1) Breach of Contract

CitiMortgage argues that the Plaintiffs' breach of contract claim based on any alleged misapplication of payments must be dismissed as inadequately pled. A plaintiff asserting a breach of contract claim has the burden of proving "by a preponderance of the evidence: 1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it . . . ." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224–25 (¶ 10) (Miss. 2012) (citation omitted). Plaintiffs allege that CitiMortgage "is a party to and is bound by the terms of" several contracts, including the Deed of Trust [28-2]. (1st Am. Compl. [25] at ¶¶ 11-12.) Plaintiffs further assert that CitiMortgage breached "the Application of Payments provision" of the Deed of Trust by not applying

their payments in accordance with the payment hierarchy (1-interest, 2-principal, 3-escrow, 4-late charges) established by that provision.  (1st Am. Compl. [25] at ¶ 15.)  The Court finds that the Plaintiffs have presented "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678; *see also Morris v. PLIVA, Inc.*, 713 F.3d 774, 776 (5th Cir. 2013) ("a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief") (citation and internal quotation marks omitted).  Therefore, this request for dismissal is denied.

### (2) Breach of the Implied Covenant of Good Faith and Fair Dealing

"All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement."  *Limbert v. Miss. Univ. for Women Alumnae Ass'n, Inc.*, 998 So. 2d 993, 998 (¶ 11) (Miss. 2008) (citing *Morris v. Macione*, 546 So. 2d 969, 971 (Miss. 1989)).  Good faith has been described as "faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party."  *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 987 (¶ 51) (Miss. 2004) (quoting *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992)).  "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness."  *Id.*  Bad judgment or negligence does not constitute bad faith.  *Id.*  Instead, "bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity."  *Lippincott v. Miss. Bureau of Narcotics*, 856 So. 2d 465, 468 (¶ 8) (Miss. Ct. App. 2003) (citation and internal quotation marks omitted).

CitiMortgage argues that the Complaint merely presents a threadbare recital of the elements and fails to allege facts supporting the inference that it breached the implied covenant.  The Complaint clearly alleges the existence of a contractual relationship between the Plaintiffs and CitiMortgage.  *Cf. Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 441-42 (¶ 33) (Miss. 2012) (holding that there can be no breach of the implied covenant in the absence of an underlying contract).  The Complaint also, albeit scantily, alleges factual content concerning conduct attributable to CitiMortgage rising above mere negligence and implying conscious wrongdoing with respect to its dealings with the Plaintiffs arising out of this contractual relationship. Plaintiffs contend that CitiMortgage conducted 48 property inspections for the purpose of creating unnecessary mortgage charges.  (*See* 1st Am. Compl. [25] at ¶ 7.)  It is further alleged that CitiMortgage provided the Plaintiffs with false information so that their loan could be placed and kept in suspense status, resulting in the creation of additional fees and charges, which the Plaintiffs did not owe, and the loan being marked for foreclosure.  (*See* 1st Am. Compl. [25] at ¶¶ 37, 39-40, 48-49.)  Resolving all reasonable inferences arising from these allegations in the Plaintiffs' favor, the Court finds that they have stated a legally cognizable claim for breach of the implied covenant of good faith and fair dealing.  *Cf. Morgan Stanley Mortgage Capital Holdings, LLC v. Realty Mortgage Corp.*, No. 3:07cv507, 2008 WL 4279585, at *5-6 (S.D. Miss. Sept. 11, 2008) (denying a motion to dismiss with respect to a breach of the implied covenant claim where the claimant accused a mortgage lender of altering its underwriting guidelines in order to increase the likelihood of borrowers defaulting on their loans); *Favre Prop. Mgmt., LLC v. Cinque Bambini*, 863 So. 2d 1037, 1046 (¶ 27) (Miss. Ct.

App. 2004) (finding allegations to the effect that the defendant intentionally thwarted the plaintiff's efforts to perform under the contract sufficient to state a claim).  Therefore, CitiMortgage's request for the dismissal of this claim is also denied.

### (3)    Negligent Misrepresentation

The Court determines that the averments of the Complaint state a claim for negligent misrepresentation.  *See Mladineo v. Schmidt*, 52 So. 3d 1154, 1164–65 (¶ 39) (Miss. 2010) (listing elements).  Thus, this cause of action will proceed past the pleading stage.

### (4)    Negligence/Gross Negligence

CitiMortgage argues that the Plaintiffs' negligence allegations should be dismissed as duplicative restatements of their breach of contract claim based on the creation of an escrow account.  The Court finds the two authorities CitiMortgage principally relies on for this position to be distinguishable.  *See Mixon v. Golden Rule Ins. Co.*, No. 2:12cv234, 2014 WL 232114 (S.D. Miss. Jan. 22, 2014); *Furr Mktg., Inc. v. Orval Kent Food Co.*, 682 F. Supp. 884 (S.D. Miss. 1988).  In *Mixon*, the issue before the undersigned was whether the defendant was entitled to summary judgment based on the absence of a genuine dispute as to any material fact.  2014 WL 232114, at *2. Here, the concern is whether the allegations of the Complaint state a claim for relief that is sufficient to avoid dismissal under Rule 12(b)(6).  In *Furr*, Judge Lee dismissed an allegation of negligence because it added "nothing which would give rise to a cause of action apart from the basic claim for breach of contract."  682 F. Supp. at 886.  The breach of contract and negligence allegations before the Court are certainly intertwined

and mirror each other in many respects.  However, the Court does not find that the allegations are so duplicative that they essentially state the same cause of action.

Furr and Mixon aside, the Court is required to follow the Mississippi Supreme Court's holding on issues of substantive state law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).  Mississippi's highest court has held that a negligence claim may be founded on the breach of a legal duty arising from a contract.  See City of Jackson v. Estate of Stewart ex rel. Womack, 908 So. 2d 703, 711 (¶ 40) (Miss. 2005) (providing that it was permissible for the plaintiff to assert breach of contract and negligence claims arising from the same operative facts); George B. Gilmore Co. v. Garrett, 582 So. 2d 387, 391 (Miss. 1991) ("[W]hile th[e] duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship . . . .") (citation omitted); cf. Williams v. Entergy Miss., Inc., 19 So. 3d 757, 762 (¶ 21) (Miss. Ct. App. 2008) ("Under Mississippi law, a party may be negligent for failure to properly perform a duty assumed under a contract.") (citing Hartford Steam Boiler Inspection & Ins. Co. v. Cooper, 341 So. 2d 665, 667 (Miss. 1977)).  Under "federal procedural law", negligence and breach of contract claims arising from the same set of facts may also coexist in one action pursuant to the well-established practice of pleading in the alternative.  Ajax Hardware Mfg. Corp. v. Indus. Plants Corp., 569 F.2d 181, 185 (2d Cir. 1977) (citing Fed. R. Civ. P. 8(e)(2), which is now codified at Fed. R. Civ. P. 8(d)(2)); cf. Nature's Formula, Inc. v. Norstar Consumer Prods. Co., No. 3:03cv1222, 2003 WL 23282765, at *3 (N.D. Tex. Sept. 10, 2003) (refusing to dismiss an unjust enrichment claim as duplicative of a quantum meruit cause of action because the Federal Rules of Civil Procedure allow for

pleading alternative claims).  Accordingly, CitiMortage's dismissal request based on the duplicative nature of the Plaintiffs' claims for breach of contract and negligence is refused.

CitiMortgage further suggests that the Plaintiffs cannot recover on their negligence claims relating to the imposition of an escrow account because the only enforceable duties existing between the parties arose from the loan documents, and the creation of the account and resulting collection of account charges were authorized by the Deed of Trust.  This suggestion fails to consider that "contracts are not the only way in which . . . [Mississippi] law imposes a duty of care.  Whenever a person does some act, the law imposes a duty upon that person to take reasonable care in performing that act."  *River Prod. Co. v. Baker Hughes Prod. Tools, Inc.*, 98 F.3d 857, 859 (5th Cir. 1996) (citing *Dr. Pepper Bottling Co. of Miss. v. Bruner*, 245 Miss. 276, 148 So. 2d 199, 201 (Miss. 1962)); *see also Garrett*, 582 So. 2d at 391 (A duty of a care may arise by operation "of the basic rule of the common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to endanger the person or property of others".).  Furthermore, whether or not CitiMortgage's acts or omissions complied with the loan documents is a merits issue that cannot be resolved at this stage of the litigation.  CitiMortgage's arguments fail to warrant the dismissal of the Plaintiffs' negligence claims at this time.

### (5)    IIED

A plaintiff may recover on an IIED claim in Mississippi "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . even though there has been no physical injury.  In such instances, it is

the nature of the act itself—as opposed to the seriousness of the consequences—which gives impetus to legal redress . . . ." *Bowden v. Young*, 120 So. 3d 971, 980 (¶ 25) (Miss. 2013) (citation omitted).  The defendant's conduct "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Id.* (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)). Liability will not attach for mere insults, threats, indignities, petty oppression, annoyances, or other trivialities.  *Funderburk v. Johnson*, 935 So. 2d 1084, 1100 (¶ 40) (Miss. Ct. App. 2006) (quoting *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (¶ 23) (Miss. Ct. App. 2004)).

The allegations at issue in *Bowden v. Young* provide a useful counterpoint to those presently before the Court.  In *Bowden*, the plaintiffs, former employees of the defendant law firm, asserted multiple claims regarding the presence of toxic mold in the workplace.  120 So. 3d at 973 at (¶ 2).  As to their IIED claim, the plaintiffs alleged that the law firm engaged in a pattern of dishonesty designed to cast doubt on their suspicions concerning the existence of the mold and their related symptoms.  *Id.* at 979 (¶ 24).  The Mississippi Supreme Court held that the plaintiffs failed to state a claim upon which relief could be granted.  *Id.* at 980 (¶ 26).  The court accepted as true the claims that the defendant initially denied the presence of mold and suggested that the plaintiffs' symptoms were caused by other ailments.  *Id.*  However, the complaint also indicated that the law firm subsequently attempted to remedy the situation by applying a chemical spray, and ultimately decided to move its offices as a result of the mold.  *Id.* "While the defendants' handling of the mold problem may have been negligent, the

-22-

allegations do not rise to the level of outrageous and extreme conduct that is necessary to support a claim for intentional infliction of emotional distress." *Id.*

As noted in the preceding discussion of the Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, the Complaint presents some limited facts giving rise to the inference that CitiMortgage engaged in intentional misconduct in relation to the Plaintiffs' loan.  Furthermore, unlike the complaint at issue in *Bowden*, the Plaintiffs' pleadings do not indicate that CitiMortgage eventually attempted to cure the alleged errors pertaining to their mortgage account.  To the contrary, Plaintiffs essentially claim that CitiMortgage doubled down on its misconduct.  "Instead of correcting the account and fixing the charges, CMI added more charges and then tried to foreclose." (1st Am. Compl. [25] at ¶ 32.)  Plaintiffs further contend that CitiMortgage lulled them into a false sense of security by misrepresenting that it was remedying the account errors.  (*See* 1st Am. Compl. [25] at ¶¶ 38-40, 48.)  Analogous circumstances have been cited in the rejection of a request for dismissal of an IIED claim at the pleadings stage.  *See Paschall v. Enter. Rent-A-Car Co.*, No. 1:08cv151, 2008 WL 2704828, at *2 (S.D. Miss. July 7, 2008) (the defendant purportedly acknowledged that the plaintiff did not return a rented vehicle in a damaged state, but nevertheless continued to demand payment from the plaintiff for damage to the vehicle).  Because CitiMortgage's alleged "[mis]handling of the mo[rtgage] problem may have been [intentional and motivated by bad faith, and not just] negligent," further factual development is required for a determination as to whether CitiMortgage's purported acts or omissions "rise to the level of outrageous and extreme conduct that is necessary to

support a claim for intentional infliction of emotional distress." *Bowden*, 120 So. 3d at 980 (¶ 26).

The Court is far from convinced that the Plaintiffs will ultimately prevail at trial or even survive summary judgment on their IIED allegations.  However, the evaluation of the Plaintiffs' ultimate likelihood of success is not the Court's present task.  *See In re McCoy*, 666 F.3d at 926.  There are enough facts, accepted as true, before the Court to deny this request for dismissal and allow the parties to move forward and conduct discovery on the Plaintiffs' IIED cause of action.  *Cf. Hanye v. Innocence Project*, No. 3:09cv218, 2011 WL 198128, at *11 (S.D. Miss. Jan. 20, 2011) (denying the defendants' request for dismissal since the plaintiff had not yet been allowed to present evidence in support of his claim, which would facilitate a decision as to whether the defendants' conduct was sufficiently outrageous).

### (6)    NIED

CitiMortgage argues that this claim fails because the Plaintiffs have not alleged any physical injuries resulting from its alleged acts or omissions.  The Court has recognized that where ordinary negligence is at issue, a plaintiff in Mississippi "must prove some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant."  *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 653 (S.D. Miss. 2013) (quoting *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1208 (¶ 40) (Miss. 2001)).  The Plaintiffs' claim of "demonstrable harm" resulting from CitiMortgage's alleged negligence is certainly ill-defined.  (1st Am. Comp. [25] at ¶ 56.)  Nonetheless, the parties can flesh out the details of the Plaintiffs' alleged injuries through the discovery process.  The

sufficiency of the Plaintiffs' proof in support of this claim may then be tested at the summary judgment stage.  *Cf. Elam v. Pharmedium Healthcare Corp.*, No. 2:07cv212, 2008 WL 1818436, at *2 (N.D. Miss. April 18, 2008) ("At this stage in the litigation-*i.e.,* before discovery has been completed-the court concludes that it is inappropriate to assume that 'harm' does not include physical harm.").  Accordingly, this request for dismissal is denied.

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that CitiMortgage's Motion to Dismiss Plaintiffs' First Amended Complaint [28] is granted in part and denied in part. Plaintiffs' claims for violations of the Fair Debt Collection Practices Act, the Fair Credit Report Act, and the Home Affordable Modification Program (including any underlying guidelines) are dismissed with prejudice.  Plaintiffs' above-discussed state law claims remain pending.

IT IS FURTHER ORDERED AND ADJUDGED that counsel for the parties are to contact the chambers of the United States Magistrate Judge Michael T. Parker within ten (10) days of the entry of this Order to schedule a case management conference.

SO ORDERED AND ADJUDGED this the 2nd day of December, 2014.

s/Keith Starrett
UNITED STATES DISTRICT JUDGE